# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
## Southern Division

| | |
|---|---|
| MAURICE HICKMAN, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. CBD-18-1238 |
| G. C. OF CAPITAL CENTRE, LLC, *et al.*, | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

Plaintiff Maurice Hickman ("Plaintiff") brought claims for failure to pay minimum wage and overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401, *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501, *et seq.* Plaintiff brought these claims as a collective action under the FLSA, 29 U.S.C. § 206(b) and as a class action under Federal Rule of Civil Procedure 23. Plaintiff sought damages, including liquidated and treble damages, from Defendants G.C. of Capital Centre, LLC, and Both, Inc., (collectively "Defendants").[1] On January 24, 2019, the parties submitted a Joint Motion for Approval of Settlement Agreement ("Joint Motion"), ECF No. 36. The parties' settlement agreement (hereinafter the "Settlement Agreement") states that Defendants will pay Plaintiff a total sum of $12,500.00 in compensation for his claims.

---

[1] The Complaint lists "DOES 1-25" as "presently unknown persons and/or entities who had control over the wages, hours, and payroll of Plaintiff and similarly situated individuals." Pl.'s Compl. ¶ 8, ECF No. 1. These individuals are not mentioned in the Joint Motion.

1

However, due to Plaintiff's retainer agreement with his counsel, $5,643.00 of that will be paid to Plaintiff's counsel as reimbursement for attorneys' fees and costs incurred throughout these proceedings, leaving Plaintiff with $6,857.00. The Court has reviewed the Joint Motion, the accompanying memorandum in support (hereinafter the "Memorandum in Support"), and the applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons that follow, the Court hereby **GRANTS** the parties' Joint Motion without modification as: (1) there exists a *bona fide* dispute; (2) the settlement agreement is both fair and reasonable under the *Saman* test; and, (3) while there is a dearth of information by which to make the assessment, the attorneys' fees agreed to appear reasonable under *Saman* as they are in line with what other cases have settled for, they represent a significant reduction from what Plaintiff's counsel incurred while prosecuting this case, and Plaintiff's retainer agreement does not appear to permit him to agree to any other division of damages.[2] A separate Order shall issue.

I. Analysis

A. A *Bona Fide* Dispute Exists

Congress enacted the FLSA to protect workers from poor wages and long hours, which are often the result of power imbalances between workers and employers. *Saman v. LBDP, Inc.*, No. Civ. A. DKC-12-1083, 2013 WL 2949047, at *2 (D. Md. June 13, 2013). Even when parties submit a joint motion seeking approval for a settlement agreement, the Court must undertake a multi-step review of the agreement and any attorney's fees requested to ensure its

---

[2] The Settlement Agreement itself appears to include a rather broad waiver of rights, including a waiver of discrimination claims under Title VII. *See* Confidential Settlement Agreement & Release ("Settlement Agreement") ¶ 6, J. Mot. Ex. 1. However, while this case began with the hopes of becoming a class action lawsuit, Plaintiff is settling the matter in his own individual capacity and has representation. Accordingly, the Court will not inquire as to the propriety or necessity of this waiver.

reasonableness. *Id.* "[A]s a first step, the *bona fides* of the parties' dispute must be examined to determine if there are FLSA issues that are 'actually in dispute.'" *Id.* at *3 (citing *Lane v. Ko–Me, LLC*, Civ. A. No. DKC–10–2261, 2011 WL 3880427, at *2 (D. Md. Aug. 31, 2011) (citation omitted)).

A *bona fide* dispute exists in this case. Plaintiff commenced this proceeding on April 27, 2018. Pl.'s Compl. ECF No. 1. Plaintiff was employed as a "server" at Defendants' Golden Corral restaurant in Largo, Maryland. Pl.'s Compl. ¶ 4. According to the Complaint, Golden Corral is a "buffet-style restaurant[], where patrons do not order food, but rather serve themselves from the buffet line." Pls.' Compl. ¶ 13. Plaintiff part-time worked as a server for Defendants between June 2013 to December 2015 and May 2016 through October 2017. Pl.'s Compl. ¶ 15. Plaintiff alleges that he earned approximately $3.63 to $4.00 per hour and that "Defendants utilized a 'tip credit' in varying amounts for each hour worked by Plaintiff" in an effort to comply with federal, state, and local minimum wage laws. Pl.'s Compl. ¶¶ 16-19. However, Plaintiff alleges that he was required to work more than twenty percent (20%) of the time "performing non-tip producing work"—such as wiping down tables and restocking condiments—which prevented him from earning tips. Pl.'s Compl. ¶ 21-29. As a result, Defendants failed to pay him minimum wage. Pl.'s Compl. ¶ 20. Plaintiff also asserted he was a part of a class of servers all of whom were similarly situated. Pl.'s Compl. ¶¶ 31-43. Defendants denied all liability in their response to the Complaint. Defs.' Answer, ECF No. 22. Defendants asserted that at times servers would receive wages "equal to or greater than" what is required by federal, state, and local laws. Defs.' Answer 5-6. Defendants made no admissions of liability with this Settlement Agreement. *See generally* Mem. in Supp. In fact, in the Memorandum in Support, Defendants argue that the law has changed concerning the "tip credit" maximum

percentage restrictions such that Plaintiff's allegations—even if true—do not constitute a violation of the FLSA and other laws. Mem. in Supp. 2-4. Accordingly, the parties were and remain at odds with one another in regard to Plaintiff's compensation—or lack thereof—as an employee of Defendants.

### B. The Settlement Agreement Passes the *Saman* Test

If a *bona fide* dispute exists, the next step in the analysis is to assess the fairness and reasonableness of a settlement agreement using the following factors:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [ ] counsel ...; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

*Saman*, 2013 WL 2949047, at *3 (quoting *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-cv-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009)).

While the parties Memorandum in Support does not address all the *Saman* factors, the Court still finds the Settlement Agreement to be fair and reasonable as Plaintiff is recovering a significant amount of money considering the fact he was working part-time during the weeks in dispute and a trial would have been tedious as he would have had to present evidence to show he worked more than twenty percent (20%) of the time doing non-tip producing work.

#### 1. Extent of discovery

There was no mention in the Joint Motion or the Memorandum in Support of any discovery having taken place nor is there any indication that any discovery took place from the docket.

## 2. Stage of the Proceedings

This settlement comes only 10 months after the case was filed with the Court. There is no indication from the Joint Motion or the Memorandum in Support where in the course of litigation this matter is.

## 3. Absence of Fraud or Collusion

There is no evidence that the Settlement Agreement is the product of fraud or collusion. "There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Saman*, 2013 WL 2949047, at \*5 (quoting *Lamscolo*, 2009 WL 3094955, at 12). Here, even with this settlement, the parties remain at odds over whether Plaintiff is owed anything or would prevail at trial. *See* Mem. in Supp. 2-5. Further, Defendants are confident they would prevail at trial—and Plaintiff appears to agree there is a risk that he would lose. Mem. in Supp. 2-5. For Plaintiff, he will be recovering some amount of the wages he alleges he is owed and Defendants are avoiding the cost and uncertainty of a trial to prove their position. Mem. in Supp. 2-5. Accordingly, the Settlement Agreement appears to be mutually beneficial but not the product of fraud or collusion.

## 4. Experience of Counsel

Plaintiff is represented by the law firm Whitfield, Bryson, & Mason LLP ("Whitfield Firm"). In support of this motion, Plaintiff's counsel provided a declaration by Gary E. Mason. Decl. of Gary E. Mason ("Mason Decl."), J. Mot. Ex. 2. The Mason Declaration included a copy of Whitfield Firm's "firm resume" detailing the qualifications of each attorney in the firm and summarize the accomplishments of Whitfield Firm in general. *See* Whitfield Firm Resume, J. Mot. Ex. 2A. Specifically, Plaintiff was represented by Gary E. Mason, a partner at Whitfield Firm with over 22 years of experience. Whitfield Firm Resume 3. Most of Mr. Mason's work

appears to have been in "consumer class actions and mass torts." Whitfield Firm Resume 3. Plaintiff was also represented by Danielle L. Perry, an associate at Whitfield Firm. Whitfield Firm Resume 7-8. It is unclear when she was admitted to any state's bar, but Ms. Perry began working at Whitfield Firm in 2016 and had spent time prior to that working in California. Whitfield Firm Resume 7-8. She therefore has at least three (3) years of legal experience. Prior to joining Whitfield Firm, Ms. Perry "spent much of her time working on lawsuits brought to recover lost wages and penalties for banking, manufacturing, retail, and property management employees." Whitfield Firm Resume 8. Lastly, Plaintiff was represented by Matthew J. Wicher and Taylor L. Heath, both paralegals with unspecified amounts of experience. Mason Decl. ¶ 4. Accordingly, the Court is satisfied that Plaintiff's counsel was sufficiently experienced in this area of law to represent Plaintiff in this matter.

### 5. Opinions of Counsel

Counsel for both parties agree that this Settlement Agreement is in their clients' best interests. The Memorandum in Support discusses the major legal uncertainty that presented itself to the parties: namely, whether the "20% Rule" would still apply to Plaintiff's case given the fact that it was the law of the land when he was working and when he filed this proceeding but recently changed in favor of Defendants' position. Mem. in Supp. 2-5. With the Settlement Agreement, there is resolution of the matter for Defendants at a relatively low cost compared to a trial, and Plaintiff recovers some of what he alleges he is owed. Mem. in Supp. 5.

### 6. Probability of Plaintiff's Success on the Merits and the Amount of the Settlement in Relation to the Potential Recovery

According to the Memorandum in Support, Defendants appear confident that the legal landscape has change significantly in their favor. Mem. in Supp. 2-5. While Plaintiff disagrees, he does acknowledge there is a new risk he might not prevail with this change. Mem. in Supp. 5.

While there is no indication how much Plaintiff anticipated recovering, the Memorandum in Support discusses how this Settlement Agreement represents a recovery of $625.00 per week for Plaintiff's claims, which is a "substantial amount" for a part-time employee. Mem. in Supp. 2. The cost and unpredictability of the outcome of a trial does support the idea of settling sooner rather than later, although it does not seem farfetched that the law in place at the time the alleged wage and hours violations occurred would remain applicable.

### C. Attorney's Fees

The final step in this inquiry is an independent assessment of the reasonableness of any attorney's fees that may be included in a settlement agreement. *Saman*, 2013 WL 2949047, at *3 (quoting *Lane,* 2011 WL 3880427, at *3). In the course of this independent assessment, the Fourth Circuit has instructed district courts to consider certain factors, including:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* at *6–7 (citing *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)). When a claim for attorney's fees is filed in the federal court in Maryland, there is an extra layer of complexity arising from the Court's Local Rules which includes an entire appendix listing "Rules and Guidelines" for how parties are to request reimbursement of fees. Local Rules, App. B (D. Md. Dec. 1, 2018).

Here, Plaintiff's counsel state they incurred costs amounting to $1,424.39 and fees amounting to $36,239.50. Mem. in Supp. 5. According to the Memorandum in Support,

7

Plaintiff signed a retainer with his counsel in which he agreed to pay all costs and thirty-five percent (35%) of whatever he recovered. Mem. in Supp. 5. According to the Settlement Agreement, Plaintiff's counsel will be receiving $5,643.00 of the total amount paid out to Plaintiff as compensation for all of the fees and costs they incurred in the course of this case; Plaintiff will take home a total of $6,857.00. Mem. in Supp. 5. As such, if the total amount of costs is deducted first, the amount Plaintiff's counsel is receiving is approximately thirty-three percent (33%) of the total amount Plaintiff recovered. The amount Plaintiff's counsel is recovering in fees is less than fifteen percent (15%) of the total amount of fees they incurred.

While the Memorandum in Support does not explicitly address each of the *Saman* factors, it does provide information concerning some. Those factors that appear to be significant to the determination of reasonableness in this case are addressed in detail below. The remaining factors present no novel issues or significant impact on the reasonableness of the attorney's fees requested.[3] Ultimately, the requested amount of reimbursement of attorneys' fees is reasonable as it is in line with what other cases have settled for, it represents a significant reduction from what Plaintiff's counsel incurred while prosecuting this case, and Plaintiff's retainer agreement does not appear to permit him to agree to any other division of damages.

1. **(1) The Time and Labor Expended**

The amount of "time and labor expended" by counsel on a particular case is an essential starting point for assessing the reasonableness of the total amount of fees requested.

---

[3] The *Saman* factors that are not addressed in detail in this memorandum are:

> (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; . . . (7) the time limitations imposed by the client or circumstances; . . . (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client . . . .

Accordingly, detailed information concerning what counsel was doing during the hours they billed for a client's case is necessary for the Court to make an accurate assessment. *See United Food & Commercial Workers Unions v. Magruder Holdings, Inc.*, No. GJH-16-2903, 2017 WL 3129192, at *4 (D. Md. July 21, 2017) (noting the movant attached "a summary of the legal services performed in the matter, broken down into date, attorney, narrative of the task, hours expended, and fees charged").

The Mason Declaration stated the total number of hours expended upon the case as well as the rates of the various members of the litigation team. Mason Decl. 2.[4] The Whitfield Firm Resume also detailed the qualifications of each attorney in the firm and summarized the accomplishments of the firm in general. *See* Whitfield Firm Resume. Plaintiff's counsel did not include any supporting documentation showing a breakdown of what tasks were completed during the hours they billed to Plaintiff's case. This does not comply with the Local Rules. *See* Local Rules, App. B(1)(b). However, as this is an unopposed motion for settlement, both parties were represented by counsel, the proceeding was relatively short in duration, and the final amount requested represents a significant reduction in the total amount of fees incurred by Plaintiffs' counsel, the Court is willing to accept the filing in its current format. Counsel are reminded of their responsibility to apprise themselves of the requirements in the Local Rules of this Court for future submissions or risk their motion being denied. *See United Food &*

---

[4] According to the Memorandum in Support, the total number of hours expended on the litigation was 107.55 with each member of the litigation team billing as follows:

- Gary E. Mason (Partner): 1.0 hour
- Danielle L. Perry (Associate): 96.45 hours
- Matthew J. Wicher (Paralegal): 4.6 hours
- Taylor L. Heath (Paralegal): 5.5 hours

Mason Decl. ¶ 4.

*Commercial Workers Unions*, 2017 WL 3129192, *4 (directing a plaintiff re-submit its request for attorney's fees in an "organizational format consistent with [the Local Rules]"). This Court still bears the responsibility of reviewing this FLSA settlement agreement for reasonableness and it will not engage in rubberstamping of orders. *Gionfriddo v. Jason Zink, LLC*, No. Civ. A. RDB-09-1733, 2011 WL 2791136, at *2 (D. Md. July 15, 2011) ("Settlement agreements that resolve claims pursuant to the FLSA must receive court approval.") (citations omitted).

### 2. (2) The Novelty and Difficulty of the Questions Raised

Based on the allegations raised in the Complaint, this case would have been a time consuming one to litigate considering the fact Plaintiff would have had to prove he worked more than twenty percent (20%) of his job doing non-tip producing work. Further, as discussed above, the Memorandum in Support describes a change in the law that raises a significant question as to whether the "20% Rule" remains good law, and therefore whether Plaintiff would have prevailed at all. Mem. in Supp. 2-5.

### 3. (5) The Customary Fee for Like Work

An additional factor considered by the Court is the customary fee attorneys charge for the type of work the attorney seeks to be reimbursed. For the convenience of counsel, the Local Rules include guidelines listing a presumptive range of reasonable hourly rates. *Gonzales v. Caron*, Civ. A. No. CBD-10-2188, 2001 WL 3886979, at *2 (D. Md. Sept. 2, 2011) ("[G]enerally this Court presumes that a rate is reasonable if it falls within these ranges.").

Here, Plaintiffs' counsel is seeking to recover fees based on hourly rates that vary depending on their experience. Mason Decl. ¶ 4. Plaintiff's counsel states that these rates are what they "charge clients who pay on an hourly, non-contingent basis." Mason Decl. ¶ 4. Based on the information provided about the individual members of the litigation team, some of the

rates requested are within the Guidelines in the Local Rules and some are not. However, the amount of fees Plaintiff's counsel will be reimbursed represents approximately 15.5 hours of work by the associate assigned to the case. Accordingly, as the rates requested have little bearing on the amount actually recovered, the Court finds them to be reasonable.

### 4. (6) The Attorney's Expectations at the Outset of the Litigation

The Memorandum in Support does not detail what, if any, expectations Plaintiff's counsel had about the case at the outset. It is clear they expected to recoup their costs as Plaintiff had signed a retainer with his counsel stating that he would pay the costs of this proceeding. Mem. in Supp. 5. Additionally, it is clear Plaintiff's counsel intended to bring the case as a class action, which would have significantly increased their potential reimbursement of fees incurred. However, by working for a contingency fee, Plaintiff's counsel undertook the risk of not being able to recover anything for the time they put into the case.

### 5. (8) The Amount in Controversy and The Results Obtained

The Memorandum in Support does not state how much was in controversy at the outset, but it does state that Plaintiff will be recovering "approximately $625 per workweek worked by Plaintiff." Mem. in Supp. 2. It also states that Plaintiff is recovering "a substantial amount for a part-time employee who generally worked between 20 and 35 hours per week." Mem. in Supp. 2.[5]

### 6. (9) The Experience, Reputation and Ability of the Attorney

The Whitfield Firm Resume describes the qualifications of each attorney in the firm and summarizes the accomplishments of the firm in general. According to its resume, members of

---

[5] If Plaintiff's calculations are correct, he only worked approximately twenty (20) weeks out of a nearly four (4) year period of time.

the Whitfield Firm have handled matters in construction defect, mass tort, product liability, wrongful death cases, employee and consumer rights litigation. Whitfield Firm Resume 1-8. It also lists cases that the firm has handled, although it does not state which attorney handled each case. Whitfield Firm Resume 8-12 (listing "Notable [Whitfield Firm] Class Action Cases" in categories that include antitrust, appliance, automobile, civil rights, construction material, environmental, FLSA, financial, insurance, personal injury and privacy/data breach cases). Additionally, Ms. Perry, the associate who handled Plaintiff's case, has focused on litigating employee rights and consumer fraud cases. Whitfield Firm Resume 7-8. Prior to joining Whitfield Firm, Ms. Perry "spent much of her time working on lawsuits brought to recover lost wages and penalties for banking, manufacturing, retail, and property management employees." Whitfield Firm Resume 8.

### 7.  (12) Attorneys' Fees Awards in Similar Cases

In his retainer, Plaintiff agreed to pay all costs and 35% of whatever he recovers in fees. Mem. in Supp. 5. The Settlement Agreement states Plaintiff's counsel will recover $5,643.00 in attorney's fees. Less the amount of costs they incurred, Plaintiff's counsel will be receiving approximately thirty-three percent (33%) of the total damages Plaintiff is recovering. This also represents less than 15% of the total amount of fees Plaintiff's counsel incurred overall. While Plaintiff's counsel has not provided any examples of attorneys' fees awards in similar cases, the Court is satisfied that the amount Plaintiff's counsel is receiving is in line with other similar cases. *See, e.g.*, *Navarro v. Eternal Trendz Customs, LLC*, Civ. A. No. TDC-14-2876, 2015 WL 898196 (D. Md. Mar. 2, 2015) (approving a settlement which included attorneys' fees and costs amounting to $3,545.20 where plaintiffs were awarded $4,291.49 and $1,298.89 in wages and liquidated damages); *see also, e.g.*, *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404 (D. Md. 2014)

(Grimm, J.) (approving a settlement that was agreed to after informal discovery and ADR and that included $3,000 in attorneys' fees and costs where plaintiff was awarded $4,500 in wages and liquidated damages).

**II.     Conclusion**

Based on the foregoing, the Court hereby **GRANTS** the parties' Joint Motion without modification as: (1) there exists a *bona fide* dispute; (2) the settlement agreement is both fair and reasonable under the *Saman* test; and, (3) while there is a dearth of information by which to make the assessment, the attorneys' fees agreed to appear reasonable under *Saman* as they are in line with what other cases have settled for, they represent a significant reduction from what Plaintiff's counsel incurred while prosecuting this case, and Plaintiff's retainer agreement does not appear to permit him to agree to any other division of damages.  In making this decision, the Court offers no opinion on the merits of Plaintiff's underlying claims or Defendants' raised defenses.

February 27, 2019                                                                  /s/
                                                                                Charles B. Day
                                                                                United States Magistrate Judge


CBD/clc